UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHATEREH SHIROUYEHNEZHAD, <br><br> Plaintiff, <br><br> v. <br><br> ANTONY BLINKEN, *et al.*, <br><br> Defendants. | Civil Action No. 23-2910 (TSC) |

## MEMORANDUM OPINION

Plaintiff is a U.S. citizen seeking an immigrant visa for her husband and two minor stepchildren (collectively, her "beneficiaries"), who live in Iran. Compl. ¶¶ 5, 66, ECF No. 1. She sued the Secretary of State and the Charge d'Affaires of the U.S. Embassy in Abu Dhabi, alleging that the consular interview appointments for her beneficiaries have been unlawfully delayed. *Id.* ¶¶ 6–7, 86–149. Defendants moved to dismiss the case under Federal Rules of Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss, ECF No. 10 ("MTD"). For the reasons set forth below, the court will GRANT that motion.

### I.   BACKGROUND

The Immigration and Nationality Act ("INA") governs the issuance of visas to foreign nationals who seek to enter the United States on a permanent ("immigrant") or temporary ("nonimmigrant") basis. 8 U.S.C. § 1101 *et seq*. The process of seeking an immigrant visa involves several steps. It begins with submitting a petition to U.S. Citizenship and Immigration Services ("USCIS"), which (if the petition is approved) transfers it to the State Department's National Visa Center ("NVC"). Then, the NVC processes the petition and other submissions

before scheduling an interview between the visa applicant and a U.S. consular officer. *See* MTD at 2–3 (citing State Department websites).

Plaintiff alleges unlawful delay in the scheduling of interviews for her beneficiaries. By July 2022, Plaintiff had received notification from NVC that all three beneficiaries were "documentarily qualified," and that the U.S. Embassy in Abu Dhabi would schedule an immigrant visa interview for each of them. Compl. ¶¶ 68–70. Since that time, however, no interviews have been scheduled. *Id.* ¶ 71. The delay has caused Plaintiff "emotional distress and the financial hardship . . . of traveling between the U.S. and Iran to remain united with her family." *Id.* ¶ 81.

Plaintiff claims that the delay is unlawful in several respects, and she seeks relief under the Mandamus Act and Administrative Procedure Act ("APA"), *id.* ¶¶ 86–149: an order declaring the validity of her claims and compelling Defendants to schedule consular interviews for her beneficiaries and adjudicate her visa application, *id.* at 33 (prayer for relief). Notably, "in cases challenging agency delay, 'the standards for obtaining relief' under the Mandamus Act and the APA are 'essentially the same.'" *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Id.* (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

Defendants move to dismiss the Complaint. They contend that scheduling visa interviews is a discretionary consular service that cannot be compelled, and that in any event the delay alleged here is not unreasonable or otherwise unlawful. MTD at 5–6.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must establish that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007). In evaluating such motions, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, the court may consider "any documents either attached to or incorporated in the complaint[,] and matters of which [it] may take judicial notice." *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." As with a 12(b)(1) motion, courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted). That said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. And a court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotation marks omitted).

### III.   ANALYSIS

Plaintiff's Complaint must be dismissed because she has failed to plausibly allege an unreasonable delay as a matter of law. That conclusion is guided by the so-called "*TRAC* factors," as set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*). *See Kahenya v. Blinken*, No. CV 23-740 (TSC), 2024 WL 1253854, at *2–4 (D.D.C. Mar. 25, 2024) (applying *TRAC* factors to alleged delay in scheduling immigrant visa interviews).

Defendants argue that the court need not even reach the *TRAC* factors because Plaintiff has failed to identify "a clear 'non-discretionary act,' or 'a clear duty to act,' that the law compels an agency to take." MTD at 7–8 (first quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); then quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). Accordingly, Defendants contend that their "delay to act—however long—cannot be unlawful or unreasonable." *Id.* at 8. The court need not address that argument, however, because the delay alleged here is not unreasonable. *See Kangarloo v. Pompeo*, No. 1:20-CV-00354 (CJN), 2020 WL 4569341, at *140–41 (D.D.C. Aug. 7, 2020) (collecting cases that have assumed without deciding that the *TRAC* factors apply). Even assuming the *TRAC* factors apply here, the Complaint must be dismissed.

The court therefore considers each of the *TRAC* factors in turn, then weighs them collectively. The six factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

> court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (formatting modified). "[T]hese factors function not as a hard and fast set of required elements, but rather as useful guidance as to whether a delay" is unreasonable. *American Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 79).

### A. Factors 1 and 2

"The first factor is the most important TRAC factor, and is typically considered together with the second TRAC factor." *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022) (quotation marks omitted). Their joint focus is "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Plaintiff does not successfully identify a specific legal deadline for scheduling her beneficiaries' interview. She relies mainly on 8 U.S.C. § 1571(b), a prefatory provision in the INA, which expresses "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." But Plaintiff does not cite "any authority holding that [§ 1571(b)] applies to the Department of State's scheduling of visa application interviews." *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022). "In fact, several cases suggest otherwise." *Id.* (collecting cases). Even if § 1571(b) did apply here, however, the D.C. Circuit has interpreted that provision as more of an "aspirational statement" than a clear requirement, and held that it is therefore "insufficient to set a deadline." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023). At most, then, the passage of more than 180 days without an interview for Plaintiff's beneficiaries may "somewhat favor[]" her in the *TRAC* analysis, but does not itself establish "the level of disproportionality . . . previously held sufficient to grant relief." *Id.* at 344. "Accordingly,

§ 1571(b) cannot here carry the weight that plaintiff would like it to shoulder." *Arab*, 600 F. Supp. 3d at 70.

Plaintiff also cites the State Department's Foreign Affairs Manual ("FAM"), which provides "directives and guidance for Department of State personnel." 9 FAM 101.1-1. One such directive is that "family-based [immigrant visa applications] must be processed within 60 days. The Department expects all [immigrant visa] units to strive to meet the []60-day requirement[]." *Id.* 504.7-2. For several reasons, this directive is not legally binding. First, the FAM "was not issued pursuant to notice-and-comment rulemaking," which suggests that it serves as internal guidance rather than carrying the force of law or creating enforceable obligations. *Poursohi v. Blinken*, No. 21-cv-1960 (TSH), 2021 WL 5331446, at *8 (N.D. Cal. Nov. 16, 2021) (citing *Scales v. Immigr. and Naturalization Serv.*, 232 F.3d 1159, 1166 (9th Cir. 2000)). And second, the directive itself uses precatory language like "policy," "expect," and "strive," *see id.* at *8, further confirming that it is "not the kind of binding action that marks the consummation of the agency's decisionmaking or generates legal consequences in particular cases," *Avagyan v. Blinken*, No. 22-cv-2440 (CRC), 2022 WL 19762411, at *5 (D.D.C. Sept. 29, 2022) (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 712–13 (D.C. Cir. 2015)). The court thus cannot treat the FAM's guidance as a legally binding deadline.

Finally, Plaintiff resorts to Executive Order 14,012. That order "directs the Secretary of State, the Attorney General, and the Secretary of Homeland Security to identify and recommend ways to remove barriers to immigration benefits and identify policies that fail to promote access to legal immigration." Compl. ¶ 50. But it creates no deadlines for the State Department's scheduling of immigrant visa interviews. *See* Exec. Order No. 14,012, 86 Fed. Reg. 8277 (Feb. 2, 2021). It thus cannot justify the relief Plaintiff seeks.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" for assessing a delay under the APA or Mandamus Act. *Khan v. Bitter*, No. CV 23-1576, 2024 WL 756643, at *4 (D.D.C. Feb. 23, 2024) (quotation marks omitted). "Even though courts have drawn no bright lines to determine reasonableness, district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Id.* (formatting modified). By contrast, courts in this district "consistently have held that two or three years does not constitute an unreasonable delay." *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022); *see, e.g.*, *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (delay of about two years did not "require judicial intervention").

Under this body of case law, the first and second *TRAC* factors favor Defendants. Plaintiff has been waiting for government action since July 2022. Compl. ¶ 71. She brought this case about fourteen months later. *Id*. Even if the court considers the delay period as running until the issuance of this Opinion, *see, e.g.*, *Mahmood v. U.S. Dep't of Homeland Sec.*, No. CV 21-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021), it amounts to about thirty months. While that period of delay is beyond the 180 days Congress apparently hoped it would take to resolve certain aspects of the visa application process, it does not exceed the range considered reasonable by courts in this district. In addition, Defendants explain that the delay has resulted—at least in part—from aftereffects of the COVID-19 pandemic and the logjam it created in visa processing. MTD at 3–4, 17. The pandemic cannot justify all delays in perpetuity, but its resulting "visa backlog" and "strain on agency resources" remain "important context coloring the processing times for visa applications." *Khan*, 2024 WL 756643, at *5. "These circumstances further weigh in defendants' favor in the TRAC factor analysis." *Id.*

B. **Factors 3 and 5**

The third and fifth *TRAC* factors are also often considered together; they "examine 'the nature and extent of the interests prejudiced by the delay,' including whether 'human health and welfare' might be implicated." *Id.* (quoting *TRAC*, 750 F.2d at 80). Plaintiff alleges that the delay has caused "both emotional distress and the financial hardship as a result of traveling between the U.S. and Iran to remain united with her family." Compl. ¶ 81. These harms are cognizable, and the court does not take them lightly. *Id.* As Defendants observe, however, "advancing the case to the front of the scheduling queue would simply benefit Plaintiff to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay." MTD at 21. Still, "the individual health or welfare of this specific plaintiff is most relevant when evaluating TRAC factors three and five." *Khan*, 2024 WL 756643, at *5 (collecting cases). Accordingly, these factors weigh at least somewhat in Plaintiff's favor.

C. **Factor 4**

The fourth *TRAC* factor favors Defendants, who correctly observe that, in effect, the relief that Plaintiff seeks "would be merely to expedite the consideration of [her] request ahead of others." MTD at 19. Although that consequence might be less disruptive than a permanent change to Defendants' policies, it could still undermine their priorities. "The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). "Because processing capacity is presently a zero-sum game, granting plaintiffs' request to expedite would necessarily mean additional delays for other applicants— many of whom undoubtedly face hardships of their own." *Murway v. Blinken*, No. CV 21-1618 (RJL), 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (formatting modified). As a result, "[r]elief that would simply reorder a queue of applicants seeking adjudication is generally

viewed as inappropriate when no net gain in such adjudications is achieved." *Tate v. Pompeo*, No. CV 20-3249 (BAH), 2021 WL 148394, at *11 (D.D.C. Jan. 16, 2021) (quotation marks omitted).

Plaintiff's objections to that conclusion are not persuasive. She first contends that she "does not seek to 'jump the line'" because she "does not have a position in the line yet." Pl.'s Opp'n to Defs.' Mot. to Dismiss at 14, ECF No. 13 ("Opp'n"). But if Plaintiff has not yet joined the line, then her proposed relief would be an even more substantial reordering of agency priorities—forcing Defendants to both place Plaintiff in the line *and* immediately move her to its front. At any rate, Defendants indicate that Plaintiff is indeed in "the scheduling queue," MTD at 20; *see id.* at 18–20, and the Complaint does not allege anything to the contrary. Consequently, "there is no burden on Defendants at the pleadings stage to provide any data as to where exactly the Plaintiff[] fall[s] within this line," and "no reason here to depart from the general rule disfavoring judicial reordering of immigration priorities." *Kahenya*, 2024 WL 1253854, at *4 (formatting modified). Factor 4 strongly favors Defendants.

### D. Factor 6

The sixth *TRAC* factor observes that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. Plaintiff argues that Defendants' bad faith is evident in their "intentional noncompliance" with Executive Order 14,012. Opp'n at 15.[1] As already noted, however, that Order does not create any clear duty or timeline with respect to scheduling visa interviews, or

---

[1] The Complaint does not clearly allege that Defendants intentionally disobeyed Executive Order 14,012. It repeatedly asserts that the State Department could have done more to improve the immigrant visa system, but never states that the Secretary of State deliberately contravened the Order. *See* Compl. ¶¶ 49–56, 86–94.

even visa adjudication more broadly. *See supra* Section III.A. Rather, it directed the Secretary of State to study and propose improvements to the immigration system as a whole. *See* Compl. ¶ 88 (citing 86 Fed. Reg. 8277 at § 3). That broad directive does not speak to the specific delay at issue in this case, and so any purported failures to carry it out do not necessarily demonstrate impropriety here. Factor 6 thus adds no weight to Plaintiff's side of the scale.

\*   \*   \*

On balance, the *TRAC* factors favor Defendants. Under the first and second, the length of Defendants' delay falls within the range of time that courts have consistently declined to consider unreasonable as a matter of law. And under the fourth factor, the relief Plaintiff seeks would disrupt the government's priorities and allow her to jump the queue of similarly situated people awaiting further action on their visa applications. The court acknowledges the real difficulties that Plaintiff and her family face because of the delay, including some that might tilt the third and fifth factors in her favor. But given a total delay of about thirty months, those difficulties are outweighed by "the government's interests in balancing its own priorities," particularly in the realm of immigration. *Khan*, 2024 WL 756643, at \*6. The court cannot conclude that Plaintiff has plausibly alleged an unreasonable delay, and her Complaint must be dismissed.

## IV. CONCLUSION

For these reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 10.

A corresponding Order will accompany this Memorandum Opinion.

Date: January 13, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge